UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

ANTONIO B. GAINES,                )
                                  )
            Petitioner,            )
                                  )
v.                                )   Nos. 2:10-cv-221 and 2:09-cr-52(1)
                                  )   *Judge Greer*
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.            )

**MEMORANDUM OPINION**

Acting *pro se*, Antonio B. Gaines ["petitioner" or "Gaines"] submitted a "Petition for Relief From a Conviction or Sentence," which was filed as a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255. In his pleading, Gaines raised five grounds for relief: (1) - (2) that his conviction was based on use of evidence gained pursuant to an unconstitutional search and seizure and an unlawful arrest, (3) that his conviction was based on a violation of the protection against double jeopardy, (4) that he was denied effective assistance of counsel, and (5) that illegal evidence was used to convict him, [Doc. 142].[1] The Court dismissed all grounds, save the fourth, on the basis of procedural default, [Doc. 157]. Gaines appealed that decision, but the Sixth Circuit dismissed the interlocutory appeal for lack of jurisdiction, [Docs. 162 and 167]. Pending before the Court is the United States's response to the motion to vacate, [Doc. 169]. For the reasons which follow, petitioner's motion to vacate will be **DENIED**.

**I. Procedural Background**

Gaines was charged, along with a single co-defendant, in a four count indictment returned by the federal grand jury on June 6, 2009, [Doc. 3]. In Count 1 of the indictment, petitioner was charged, along with co-defendant Sommer L. Wright, with conspiracy to distribute and possess with the intent to distribute a quantity of cocaine base in violation of 21

---

[1]    Each document will be identified by the court file number assigned to it in the underlying criminal case.

U.S.C. §§ 841(a)(1), (b)(1)(C) and § 846; in Count 2, along with Ms. Wright, of possession with the intent to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; in Count 3, again with his co-defendant, of possession with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B); and in Count 4 with possession with the intent to distribute a quantity of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), [*Id*.].

Thereafter, based on laboratory results, the government moved to change Count 3 of the indictment to "possession with the intent to distribute a quantity of a mixture and substance containing a detectable mount of heroin," and the motion was granted. The government then moved to dismiss Count 2, and that motion likewise was granted. Petitioner proceeded to trial and the jury found him guilty of Counts 3 and 4 and not guilty of Count 1. For these offenses, petitioner was sentenced to an effective 41-months' term of imprisonment, [Doc. 118].

Petitioner filed a direct appeal, [Doc. 119], but the Sixth Circuit, finding no error with respect to the single claim raised therein (i.e., that the indictment was amended impermissibly), affirmed the conviction, [Doc. 152]. While Gaines's direct appeal was pending, he submitted the instant § 2255 motion.

## II. Standard of Review

This Court must vacate and set aside petitioner's conviction upon a finding that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . ." 28 U.S.C. § 2255(b).

2

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. If the motion to vacate, the answer, and the records of the case show conclusively the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. Factual Background

On March 28, 2009, police officers in Bristol, Tennessee, responding to a complaint concerning narcotics trafficking, went to the Days Inn Motel and knocked on the door of Room 235. After some minutes, Gaines opened the door and the officers entered. Co-defendant

3

Wright was in the room. The officers asked the duo to step out of the room. Ms. Wright ran back to the bathroom and flushed the toilet. An officer later found a plastic bag containing a white substance and a razor blade in the toilet bowl. The plastic bag was retrieved but, upon subsequent testing, its contents were found not to be a controlled substance, but instead, sodium bicarbonate. A police dog, trained in detecting narcotics, was brought into the room and it alerted twice, once at a trash can and once at a black duffle bag. Inside the trash can was an aluminum soda can with burn residue on the inside lip of its bottom, which according to an officer, could be used to heat heroin to a liquid for injection into a vein.

The black duffle bag contained an Aquanet hair spray can and a Gunk Puncture Seal can—both of which had false bottoms, forming hidden compartments. Inside the compartment of the hair spray cannister was 15 grams of marijuana and inside the other can were 324 small wax paper packets containing heroin, folded and bound together into larger bundles. The duffle bag also held Gaines's passport, his South Carolina ID, and several documents and pieces of correspondence, which listed Gaines's address or return address as the Days Inn Motel or as the street number of the Days Inn. Discovered in the room were a glass pipe and tube, items which, as subsequent evidence revealed, can be used to smoke narcotics. A search of petitioner's person yielded $2,860 in cash, in denominations of $100, $50, and $20.

At the trial, officers testified as to the above details. A chemist testified as to the analysis he performed on the substances which had been sent to him for testing. Ms. Wright also testified at trial, explaining her role in the above events and stating that she had made several trips to South Carolina with petitioner and others, stopping in different cities and going into residences along the way for short increments of time. She further testified that she had flushed the commode upon Gaines's direction and that he had instructed her to tell the police that the drugs

4

they had found belonged to "Flex." Tapes of phone conversations between Gaines and his mother were played and, in those tapes, petitioner explains to his mother that he did not get caught with "cookies" or "powder," but instead with "diesel" and "weed." These four words, according to later testimony, meant respectively crack cocaine, powder cocaine, marijuana, and heroin.

After hearing all the evidence, the jury convicted petitioner of Counts 3 and 4, but found him not guilty on Count 1.

## IV. Discussion

In his § 2255 motion, Gaines alleges, as claims of ineffective assistance, that counsel failed: (1) to present a good case, (2) to attempt to show petitioner's innocence, (3) to try to negotiate a plea agreement, and (4) to try to dispute his discovery. Petitioner was represented at trial by Assistant Federal Defenders Tim S. Moore and Nikki C. Pierce.

A. *Relevant Law*

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it

5

> cannot be said that the conviction . . . resulted from a break down
> in the adversary process that renders the result unreliable.

466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the movant. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Moreover, counsel's conduct is strongly presumed to fall within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

6

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

B. *Analysis*

At the outset, as the United States points out in its response, Gaines's motion does not contain any factual support for his claims that he was denied ineffective assistance of counsel. He states his claims only in conclusory fashion. Rule 2 of the Governing Rules requires that the motion, among other things, "specify all grounds for relief available to the moving party" and "state the facts supporting each ground." A petition which fails to state the supporting facts is legally insufficient on its face and federal courts are thus authorized to summarily dismiss such a petition. *McFarland v. Scott*, 512 U.S. 849, 856 (1994).

A motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Marchibroda v. United States*, 368 U.S. 487, (1962); *Short v. United States*, 504 F.2d 63 (6th Cir. 1974). When a petitioner files a § 2255 motion, he must set forth facts entitling him to relief. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (collecting cases).

Despite having been pending for more than three years, Gaines's motion lacks the necessary factual support for any of his claims for relief and is insufficient to support a claim for relief under § 2255. *See Siers v. Ryan*, 733 F.2d 37, 45 (3d Cir. 1985) *cert. denied*, 490 U.S. 1025 (1989) (dismissal warranted when "it appears on the face of the petition that petitioner is

7

not entitled to relief."). *See also United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (vague and conclusory allegations contained in a petition may be disposed of summarily without further investigation by the court); *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (finding that a § 2255 petition cannot stand on vague and conclusory assertions of a constitutional violation; rather, the petition must set forth facts with sufficient detail to point the district court to the real possibility of a constitutional error); *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (holding that vague or conclusory allegations warrant summary dismissal of § 2255 claims); *United States v. Aiello*, 814 F.2d 109, 113-114 (2d Cir. 1987) (holding that a § 2255 petition must be based on more than "[a]iry generalities, conclusory assertions and hearsay statements."); *United States v. Unger*, 635 F.2d 688, 691 (8th Cir. 1980) (holding that "[c]onclusory assertions that a defendant's pleas were involuntary and coerced are insufficient.").

Nevertheless, the Court will attempt to address petitioner's claims on the merits, as has the United States in its response, to the extent they can be discerned from his skeletal allegations. Even considering the claims on the merits, however, they plainly lack merit and are insufficient to entitle Gaines to relief.

### 1. Counsel Failed to Present A Good Case

Petitioner does not indicate the nature of counsel's failings by pointing to acts or omissions which amounted to ineffective assistance in the presentation of the defense. Even so, the Court has reviewed the trial transcript which shows that, during jury selection, counsel used six or more of his peremptory challenges to strike jurors, which counsel presumably believed would be problematic for the defense. It likewise reflects that Moore cross-examined the

8

officers involved and that the questions he posed were calculated to test their recounting of the events surrounding the search of the motel room and generally to impeach their testimonies.

For example, through counsel's questioning, he sought to imply that there were other explanations, beyond possible destruction or hiding of drugs, for the delay in petitioner's opening the door when the officers knocked, to provide an alternative suspect, one Cornelius Harding, whose street name was Flex," as the culprit in any drug trafficking which was occurring at the Days Inn, to highlight gaps in the investigation, such as the failure to check the canisters found in the trash can and the duffle bag for fingerprints, and to insinuate that the amount of marijuana found during the search was consistent with personal use, rather than distribution. Moore further sought to undermine the case against his client by having an officer admit, during cross-examination, that no firearms were found in the motel room, though many times, firearms and drug dealers go together, that a drug dog could alert on U.S. currency which contained narcotics residue, that a high percentage of currency carries cocaine traces, and that the dog did not alert to the cash found on Gaines's person.

Moore also made the point, in his cross-examination of the desk clerk who testified that vehicles would come and go and people would go to Room 235 for short intervals, that the desk clerk was not watching the monitor continuously (and hence the traffic flow), but instead was attending to the duties entailed by his position, and that moreover, Room 235 was in the back of the motel, whereas the parking lot and the lobby where the desk clerk worked were in the front.

Similarly, in cross-examining Ms. Wright, Moore sought to show that, in exchange for her testimony, she had been offered a favorable plea bargain, which included possible probation, rather than a sentence of imprisonment, that she had also agreed to become a confidential informant engaged in setting up drug buys, and that details involving the heroin found during the

9

search were part of the factual basis supporting her guilty plea, as well as the testimony she gave at petitioner's trial, but that these details were omitted from her initial statement.

Furthermore, against the advice of Moore as well as co-counsel Pierce, petitioner took the stand at trial. Thereupon followed testimony which, if not incriminating, clearly undermined Gaines's credibility, perhaps even sabotaging his own defense, and, from his attorneys' perspective and as described by this Court, "was painful to watch," [Doc. 134, T. Tr. at 45].

At one point, Attorney Moore explained that his client had insisted that he question an officer about the officer's prior testimony, given in the state court proceedings, involving the same conduct on the part of the petitioner, and which formed the basis of the federal charges. (The Court found this questioning puzzling and, responding to counsel's explanation for that line of inquiry, commented that the testimony thus elicited had not been helpful to petitioner.) Furthermore, Gaines apparently insisted on having 911 tapes played at the trial, then changed his mind about playing the tapes, only to resume his original position of desiring to have the tapes played. (Ultimately, the Court excluded the tapes as irrelevant.) Gaines was likewise indecisive about the playing of omitted portions of tape-recorded telephone conversations in which he had engaged while confined as a pretrial detainee in a local jail. Throughout all of these events, Moore modified the defense's blueprint for the trial, so as to accommodate his client's ever changing wishes as to the presentation of his defense.

It is obvious to this Court that, despite their client's ill-considered testimony, counsel did a good job on Gaines's behalf, as petitioner was found not guilty of the cocaine conspiracy in Count 1. And it remains that petitioner has not pointed to specific acts or omissions on the part of counsel to illustrate any deficiency of performance, which *Strickland* instructs he must do, nor

10

has he alleged anything to show how he was prejudiced by counsel's purported failure to present a good case.

In the absence of these two showings, there is nothing upon which to base a finding of ineffective assistance, and indeed, from the Court's reading of the transcript, Gaines's attorneys did all that could be done and more in their defense of a client who insisted on telling his story to the jury—a jury which, by virtue of its finding of guilt on the heroin and marijuana possession charges, clearly rejected that recounting.

### 2. Counsel Failed to Show Innocence

Gaines claims, again without any factual elaboration, that his attorney did not attempt to show that he was innocent. In his testimony at trial, Gaines denied that he had anything to do with the drugs which formed the basis of his federal criminal charges.

A petitioner establishes actual innocence by showing that it is more likely than not that, in light of all the evidence, no reasonable juror would have convicted him. *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Schlup v. Delo*, 513 U.S. 295, 327-28 (1995)). "Actual innocence" is defined as factual innocence, not mere legal insufficiency. *Id*. at 623. Moreover, a credible claim of actual innocence must be supported by new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324.

Petitioner has offered absolutely nothing to support his claim, beyond his own self-serving protestations of innocence. Therefore, assuming that there is a free standing claim of actual innocence in a non-capital case, *but see Dretke v. Haley*, 541 U.S. 386, 396 (2004) (declining to decide "whether and to what extent the [actual innocence] exception extends to non-capital sentencing error") and *Herrera v. Collins*, 506 U.S. 390, 404-405 (1993) ("We have never held that [the miscarriage of justice exception] extends to freestanding claims of actual

11

innocence."), petitioner has failed to state one. The Court finds no ineffective assistance in this regard.

### 3. Counsel Failed to Obtain a Plea Offer

Petitioner alleges, in this claim, that counsel "at no time tried to obtain a plea for me" [Doc. 142 at 10]. A criminal defendant "has a right to be informed about [a] plea agreement, and counsel's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel." *United States v. Wynn*, 663 F.3d 847, 851 (6th Cir. 2011) (internal citations and quotation marks omitted). Indeed, where a guilty plea offer has lapsed or been rejected due to an attorney's deficient performance, which results in more serious consequences, the Constitution provides a remedy. *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) (plea rejected based on counsel's incorrect advice); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) (counsel did not communicate a plea before it lapsed, and a less favorable plea agreement followed). Even so, "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); *United States v. Martin*, 516 Fed. Appx. 433, 443, 2013 WL 656258, *7 (6th Cir. Feb. 25, 2013) (same) (quoting *Weatherford*). Since "no constitutional right was compromised," *Id.*, 516 Fed. Appx. 433 at 443, 2013 WL 656258, at *7, Gaines's attorneys did not provide ineffective assistance by failing to secure a plea deal, which the record does not show was ever offered.

Furthermore, if either party refuses or chooses not to negotiate, for whatever reason, there can be no plea agreement. As the United States argues in its response, Gaines denied in his testimony at trial that he had anything to do with the drugs found during the search and, in his present § 2255 motion, continues to assert innocence. Petitioner's stance renders it unlikely that

12

he would have consented to plead guilty, given his protestations of innocence. Because Gaines has not shown a prejudicial performance on the part of his counsel, his claim warrants no relief.

### 4. Counsel Failed to Dispute Discovery

Once again, petitioner provides absolutely no factual support for his claim. Even so, the record shows that the magistrate judge entered an order on discovery, requiring that the United States, in response to defendant's requests, provide, to the extent possible, all discovery and imposing that requirement on the prosecution on a continuing basis. The record suggests that discovery was provided, given the fact that, shortly after the entry of the discovery order, defense counsel filed motions to suppress both evidence seized during the search and his client's statements, [Docs. 26 & 39]. Those motions were followed by a hearing, during which counsel engaged in a vigorous cross-examination of the government's witnesses and argued on behalf of the suppression of this evidence, [Doc. 59, Supp. Hr'g Tr]. Furthermore, as correctly argued by respondent, defense counsel utilized at trial materials obtained in discovery, [Doc. 134, T. Tr. at 2 (defense exhibit consisting of 911 dispatch tapes), 6 (referring to recordings "that the government furnished us")].

As noted previously, it falls to a petitioner to identify "the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Fautenberry v. Mitchell*, 515 F.3d 614, 623 (6th Cir. 2008) (quoting *Strickland*, 466 U.S. at 690). This Gaines has failed to do. The record does not support that counsel gave a prejudicial performance in this regard and this particular claim raised by petitioner lacks merit.

### V. Conclusion

For the reasons set forth above, the Court holds petitioner's convictions and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to

13

vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** and his motion **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each claim raised.

A separate judgment will enter.


**ENTER**:


s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE